

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00524-CR

Roger **ZAMORA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2023CR9958
Honorable Lisa Jarrett, Judge Presiding

Opinion by:    Adrian A. Spears II, Justice

Sitting:    Lori I. Valenzuela, Justice
Adrian A. Spears II, Justice
Velia J. Meza, Justice

Delivered and Filed: July 30, 2025

AFFIRMED

A jury convicted Roger Zamora of the offense of aggravated robbery. In one issue, Zamora argues the part of his extrajudicial confession in which he stated that he exhibited a gun during the robbery was not sufficiently corroborated under the corpus delicti rule. We affirm.

### BACKGROUND

The indictment in this case accused Zamora of the offense of aggravated robbery, alleging:

> [O]n or about the 15th Day of January, 2023, ROGER ZAMORA, hereinafter referred to as defendant, while in the course of committing theft of property and with the intent to obtain and maintain control of said property, did intentionally and knowingly threaten and place [the complainant] in fear of imminent bodily injury and death, and the defendant did use and exhibit a deadly weapon, to-wit: A FIREARM.

Zamora entered a plea of not guilty to the allegations in the indictment.

At trial, the evidence showed that Zamora stole the complainant's car, a white Kia Sportage, while it was parked in a parking lot. The complainant's cell phone and credit cards were in her car. Within fifteen or twenty minutes, the sixty-five-year-old complainant reported the incident to a 9-1-1 dispatcher. Three to four hours later, Zamora used the complainant's credit cards to make purchases at two stores. Surveillance video from one of the stores showed Zamora in the store and the complainant's white Kia Sportage parked outside.

Police detective Reynaldo Sanchez testified that he investigated the aggravated robbery and identified Zamora as the primary suspect. Sanchez interviewed Zamora while he was in jail on an unrelated matter. During the videotaped interview, Zamora confessed to stealing the complainant's car and exhibiting a gun in the process. Zamora explained how, before committing the robbery, he parked his car on the street and sat in the driver's seat watching the complainant and her car in a nearby parking lot. Zamora noticed the complainant get out of her car without her purse. She left the car running and was not paying attention. Zamora instructed his nephew, who was sitting in the passenger seat next to him, to drive off as soon as he got out of the car. Zamora then exited his parked car and jumped into the driver's seat of the complainant's car. The complainant did not notice Zamora until after he was sitting in her car. When the complainant saw Zamora in her car, she yelled. Zamora then showed the complainant his gun "as a scare tactic." During the interview, Zamora demonstrated how he held his gun up to show it to the complainant.

After showing the complainant his gun, Zamora drove away with the complainant's car and its contents.

Two other police officers, Ashley Gerken and Joel Pavon, testified that they were on patrol three weeks later when they saw the driver of a black Ford Focus run a red light and initiated a traffic stop. The driver, who was later identified as Zamora, turned into an apartment complex parking lot, stopped the car, exited from it, and took off running. As the officers pursued Zamora on foot, Zamora placed his hands on the front of his waistband and threw an object at the door of one of the apartments. When the object struck the door, it made a metallic sound. After following Zamora around the apartment complex, the officers caught up to Zamora and arrested him for evading arrest. The officers saw that Zamora was wearing an empty firearm holster in his waistband area. When the officers conducted an inventory search of Zamora's car, they found a couple of firearm magazines containing bullets in the pocket of the driver's side door. The officers believed the object Zamora discarded when he took off running was a firearm. The officers subsequently searched for the firearm discarded by Zamora, but they were unable to find it.

The trial court admitted the videotaped interview of Zamora's confession. However, the trial court refused to admit the audio recording of the 9-1-1 call made by the complainant after the robbery. The complainant did not testify at trial.

The jury found Zamora guilty of aggravated robbery and punishment was assessed at forty-two years in prison. Zamora appealed.

## APPLICABLE LAW

"The *corpus delicti* rule is a common law rule of evidentiary sufficiency that applies to convictions based on extrajudicial confessions." *Miranda v. State*, 620 S.W.3d 923, 928 (Tex. Crim. App. 2021). The purpose of the corpus delicti rule is to ensure that a person is not convicted

solely on his own false confession to a crime that never occurred. *Shumway v. State*, 663 S.W.3d 69, 75 (Tex. Crim. App. 2022). The corpus delicti rule essentially adds an additional requirement to the traditional *Jackson v. Virginia*[1] legal sufficiency analysis for cases involving extrajudicial confessions. *Id*. "The analysis focuses on whether someone committed the crime but is not as rigorous as the *Jackson* legal sufficiency review." *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021). "[T]he quantum of independent evidence necessary to corroborate the corpus delicti in a criminal prosecution relying upon the extrajudicial confession of the accused need not be great." *Gribble v. State*, 808 S.W.2d 65, 71-72 (Tex. Crim. App. 1990). "So long as there is some evidence which renders the *corpus delicti* more probable than it would be without the evidence," "the essential purpose[] of the rule [is] served." *Id*. at 72. When evaluating the sufficiency of the corroborating evidence to satisfy the corpus delicti rule, we view the evidence in the light most favorable to the jury's verdict. *Fisher v. State*, 851 S.W.2d 298, 303 (Tex. Crim. App. 1993).

Robbery is committed if a person, while in the course of committing theft and with the intent to obtain or maintain control of the property, either intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *See* TEX. PENAL CODE § 29.02(a)(2). Aggravated robbery is committed if a person commits a robbery plus one of three aggravating circumstances: (1) the infliction of serious bodily injury; (2) the use or exhibition of a deadly weapon; or (3) the infliction of bodily injury or the threat of imminent bodily injury or death to a person sixty-five years of age or older or to a person who is disabled. *See* TEX. PENAL CODE § 29.03(a).

## DISCUSSION

---

[1] 443 U.S. 307 (1979).

On appeal, Zamora acknowledges that his confession was sufficiently corroborated as to the elements of the offense of robbery. Zamora's only complaint is that the part of his confession admitting to the aggravating circumstance—the use or exhibition of a firearm during the robbery—was not sufficiently corroborated as required by the corpus delicti rule. [2]

For purposes of the corpus delicti rule, the corroborating evidence need not independently prove the crime; it must simply make the occurrence of the crime more probable than it would be without the evidence. *Shumway*, 663 S.W.3d at 75. Corpus delicti may be proven by direct or circumstantial evidence. *White v. State*, 591 S.W.2d 851, 864 (Tex. Crim. App. 1979), *overruled on other grounds*, *Bigby v. State*, 892 S.W.2d 864 (Tex. Crim. App. 1994); *Parrish v. State*, 485 S.W.3d 86, 90 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). The question is "whether there was sufficient corroborative evidence which tended to support the content of the confession." *White*, 591 S.W.2d at 864.

Here, Zamora stated in his videotaped interview that, before committing the robbery, he watched the complainant from the driver's seat of a parked car. The fact that Zamora launched the robbery from the driver's seat of his car is significant in this case. The independent evidence includes testimony from two officers that Zamora was pulled over for a traffic violation three weeks after the robbery. Upon fleeing from his car, Zamora discarded a firearm. When the officers arrested Zamora for evading arrest, he was wearing an empty firearm holster and bullets were within his reach in the driver's side pocket of the car. Additionally, the investigating detective, Salazar, listened to the audiotape of the 9-1-1 call placed fifteen to twenty minutes after the robbery. Salazar testified that when he listened to the 9-1-1 audiotape, he could tell from the

---

[2]Zamora argues the State was required to prove the specific manner and means alleged in the indictment and could not rely on unpled alternatives to satisfy the corpus delicti rule. The State does not challenge this assertion. Accordingly, we assume, without deciding, that the State was limited to the manner and means alleged in the indictment for purposes of satisfying the corpus delicti rule.

complainant's voice that she was still scared. The complainant's lingering fear supports an inference that Zamora displayed a gun during the robbery. The above-mentioned evidence and the reasonable inferences that flow therefrom tend to support Zamora's statement that he showed the complainant his gun when he committed the robbery.

In sum, the cumulative force of the independent evidence, viewed in the light most favorable to the verdict, makes Zamora's statement that he exhibited a gun during the robbery more probable than not. *See Fisher*, 851 S.W.2d at 300-01, 304 (concluding evidence such as defendant's steam cleaning his carpet soon after victim's disappearance, discovery of ashes and burned bones near a friend's house that defendant had recently visited, and recent traces of blood in the garbage disposal and drainpipe of defendant's house were sufficient to corroborate his extrajudicial confession to murdering and mutilating his girlfriend); *Gribble*, 808 S.W.2d at 72-73 (concluding, in case involving capital murder committed in the course of a kidnapping, that corpus delicti of kidnapping was established based on the lack of motive to move the deceased's body from her home, the lack of evidence of a struggle in the deceased's home, and the discovery of the deceased's purse in a lake near her body); *Thomas v. State*, 807 S.W.2d 803, 806 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd) (concluding evidence was insufficient to establish the corpus delicti of aggravated robbery when, among other things, there was no evidence that "appellant was ever in possession of [a weapon]").

We conclude Zamora's extrajudicial statement that he exhibited a gun during the robbery was sufficiently corroborated and, therefore, the corpus delicti rule was satisfied. The judgment of conviction is affirmed.

Adrian A. Spears II, Justice

DO NOT PUBLISH